WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT

TINA CABISCA

                Plaintiff

                                PLAINTIFF'S AFFIRMATION IN
RESPONSE TO DEFENDANTS'
MOTION IN LIMINE DOCKET
93-1 AND SUPPLEMENTAL

MOTION IN LIMINE DOCKET 94


14-cv-6485-EAW-JWF



CITY OF ROCHESTER, NEW YORK,
DARYL HOGG, JASON PRINZI, MARYROSE
AND EARL WENGERT AS CO-EXECUTORS OF
 THE ESTATE OF NOLAN WENGERT,
CARRIE BERKSTRESSER and K TURNER

                       Defendants

_____

I

Plaintiffs hereby respond to the first unnumbered issue raised by Defendants

entitled "Tyrone and Gerald Flowers Witnesses should be excluded"

1

1.   Plaintiff's response to that arguments is as follows:

The third sentence in that section is incorrect. Expert discovery did not close on 9-27-15. Instead it closed on 9-30-16 pursuant to Docket 14, and Plaintiff complied with that deadline.

With respect to the testimony of Tyrone Flowers the court has already ruled that Tyrone Flowers' testimony could be preserved by deposition in this case at Docket 45 pages 31 and 32 of 34. He was so deposed. While the Court has not allowed Jerald Flowers to testify on plaintiff's direct case, there is no reason why he can't testify for Plaintiff on rebuttal, if needed.

The Plaintiff does plan to call Tyrone Flowers to testify on her direct case, and if needed call Jerald Flowers to testify on rebuttal. Tyrone Flowers is subpoenaed to testify on 2-20- at 2 pm.

Also please note the last two sentences of page 1 of the Defendant's Motion in Limine are meaningless as they do not clarify to which "Mr. Flowers" the Defendants refers, and the first sentence of the first full paragraph on page 2 refers to striking an "Affidavit". At this time Plaintiff has no intention of introducing an "Affidavit" in evidence at trial. Defendants' assertion that "The late disclosure as a 'rebuttal witness is highly dubious'" is erroneous, as the notification of any rebuttal

witnesses are not required pursuant to Rule 26, and in any event Plaintiff's did

provide names and other information regarding many potential rebuttal witnesses

to Defendants over a year ago, in Documents 49 through 49-14, if not sooner.

2.    Plaintiff hereby responds to the second unnumbered issue raised by

Defendants entitled, "Medical Records"

    The plaintiff has submitted 20 Exhibits, in Plaintiff's Exhibit Book. None of

those Exhibits are medical records. The Court has already granted the Defendants'

motion to exclude many medical records. Please note, however, that we strongly

dispute the statement in Defendants Motion now before the court on page 2 which

claims, that Plaintiff's failure to provide medical records unfairly prejudices the

Defendants. This is because Defendants' counsel had not only the right, but the

duty, to depose Plaintiff with respect to all her medical treatment and all her

medical providers. I believe defendants' counsel did not ask for that information at

the deposition, or make any Rule 34 demands for that documentation, hoping to

sandbag Plaintiff who had neglected to provided Rule 26 documentation for that

documentation, knowing that if Defendants' counsel made no demands for that

information through Rule 34 or asked appropriate questions of Plaintiff at her EBT,

or demand for such documentation at that time, that Defendants' counsel could

then take the position that Plaintiff did not provide the documentation pursuant to

Rule 26,and thereby try to preclude Plaintiff from offering it in evidence at trial. (Frankly I had assumed Mr. Ash had made timely Rule 34 Demands and that I had properly responded to those demands, and was shocked to learn that he had not made those demands and that therefore I had not responded to them.) And those records may be produced with witnesses on rebuttal if need be. As noted above they were provided to Defendants' counsel over a year ago in Dockets 49 through docket 49-14.

It is my clear recollection that when this matter was addressed in open court the Court stated that if the information was considered by plaintiff's experts that experts could address the records they relied upon when reaching their expert opinions and preparing their reports,  at trial.  That is what I intend to do with some of those records.


3.   Plaintiff hereby responds to the third unnumbered issue raised by Defendants entitled, "False Arrest"

The Plaintiff has included a cause of action in Malicious Prosecution, and that cause of action will address the damages Plaintiff suffered as a result of the Defendants' maliciously prosecuting Plaintiff on the charges for which she was falsely arrested.

4

4.   Plaintiff hereby responds to the fourth unnumbered issues raised by

Defendants entitled, "Loss of a pet"


     Plaintiff hereby cites <u>Criscuolo v Grant County</u> 2014 WL 527218. In that

case the **only** apparent issue was the liability of the defendant for shooting and

killing plaintiff's dog and the damages associated with that killing. While the

Defendants claimed in that 1983 cause of action that the Plaintiff was only entitled

to the "market or replacement value" of the dog, which was "a mixed breed dog

that plaintiff obtained for little or no money" apparently had virtually no market

value *11, the Court disagreed, saying at *12 that, "still at issue re any emotional

distress damages recoverable under Plaintiff's section 1983 excessive force claims.

Damages for psychological harm are generally available under 42 U.S.C. section

1983." The Court also noted at *11 that, "much of the damage to Plaintiff was

emotional, stemming from the loss of his longtime canine companion."


5. The Plaintiff made a Motion in Limine, Document 89 on 1-10-19, which the

Court denied without prejudice the next day, Docket 90, on its own, without the

Defendant responding in any way thereto. In its Dismissal Order the Court did not

address the Plaintiff's request that the Tueller 21foot rule be placed in evidence at

our upcoming trial (see Notice of Motion Relief Requested 1. B last line, of

Document 89, and pages 19 of Docket 89-1, the first sentence of the last paragraph

where I noted that Mr. Ash had provided me with a copy of that RPD Tueller rule

during the case of <u>Williams v City</u> 13-cv-6152, and that said rule is further

discussed on pages 20-25 of Document 18-1 in this Plaintiff's Motion in Limine. It

was provided to me in <u>Williams</u> as Exhibit 19 attached to Mr. Ash's affidavit made

in response to Judge Payson's 10-27-17 Order, Document 136.(That Order also

Ordered that those Defendants' pay financial sanctions for their failures to provide

such discovery pursuant to a prior discovery Order of Judge Payson and

Defendant's discovery obligations.)

   I sent two emails to Mr. Ash, one dated 5-31-18 and the second dated 12-16-

18, both attached as **Exhibit A** hereto. The first asked if he objected to my

introduction of the Tueller 21 foot Rule in evidence, Document 23-3. The second

made that same request and also asked if he would agree to allow me to put in

evidence Plaintiff's records of crimes on Kingsboro Road during the year prior to

9-7-13, Document 23-1. I have no record or recollection of his ever replying to

either of those emails. I ask the Court to take his failures to respond as Defendants'

failures to object to my requests, and therefore constructive consent to them.

(These are documents I requested in Plaintiff's Motion in Limine, Docket 89.)

   Also please note the 6-18-18 letter I wrote to the court anticipating a pre-trial

conference. That letter asked for numerous forms of relief including the right for

Plaintiff to address the report of Dr. Kutrybala the veterinarian who examined the

dog that was shot, (3d paragraph of page 3), the Tueller 21 foot rule, Wengert's

various conflicting versions of the shooting event including his statement to Sgt.

Rivers, his statements at the dog hearing, and ones made at his EBT. I don't

believe I received a response to that letter from the Court or from Mr. Ash who

was cc'd a copy of that letter.


6. While the Court stated in Docket 90 that it had already denied Plaintiff's request

for subpoenas relating to investigator Wengert's death, we contend the Plaintiff's

first Motion was to extend discovery (that might have led to more discovery, such

as more depositions for example, while the Motion in Limine is just for the

documents themselves, for use at trial.)

 The Court noted that even is the subpoenas show Wengert died of a heroin

overdose, that finding didn't mean Wengert was suffering from such a condition on

9-7-13, three and one half years before his death. However, the results of the

subpoenas, especially those for investigations, might show Wengert had a

yearslong drug affliction, and when combined with the many bizarre actions he

committed on 9-7-13 that demonstrated he was suffering from a seriously addled

mind that night, that information might be admissible in evidence and very relevant

to his state of mind, and his ability to perceive the reality he faced on 9-7-13

causing him to react irrationally and/or illegally, on 9-7-13. Some of these bizarre

actions taken, and beliefs held, by Wengert on 9-7-13 are set forth in my

Affirmation, Docket 89-1.

     As for maintaining privacy of the cause of his death, on information and

belief, it is common knowledge, at least among the criminal justice community in

Monroe County, such as Assistant District Attorneys and at least one Supreme

Court Justice, that Wengert died of a heroin overdose. (I cannot however, reveal

my source for that information, without jeopardizing the future job security of my

source.)


## PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL
## MOTION IN LIMINE DOCKET 94

7. The Defendants have moved to rely on the proposition of collateral estoppel to

prevent the Plaintiff from attempting to prove that her dog did not attempt to attack

investigator Wengert before Wengert shot her dog, and is basing their requests on

the fact that there was a Municipal Code Violations Bureau Hearing on the charges

of unleashed Dogs, on 10-30-13, less than two months after the 9-7-13 incident

took place.


8

While the Hearing Examiner found that Plaintiff's dog that was shot was "a dangerous dog", the Plaintiff appealed, and the City responded to the Notice of Appeal by dismissing the charges, thereby making the findings of the Hearing Examiner moot, and of no relevance on the Defendants' Motion for collateral estoppel. See **Exhibit B** attached hereto, trial Exhibit 8. Johnson v Watkins 101 F.3d 792 Second Circuit, Crespo v NYC Police Commissioner et al 930 F Supp. 109, S.D.N.Y.   1996, JP Morgan Chase Bank N.A. 135 A.D.3d 762, New York Second Department. Clearly if collateral estoppel can't be used in cases where a party did not have the opportunity to appeal the determination, it's even more inappropriate to rely on collateral estoppel in a case like the one now before this Court, where the losing party appealed, and the appeal panel then remanded the case back for a new hearing, but the party who had won at the hearing, then abandoned a new hearing, dismissed the verdict and voided the tickets that were found to have been violated at the hearing, and voided the fines that had been imposed. **Exhibit B** attached hereto, trial Exhibit 8.

Furthermore the issue of the shooting of the dog was not "thoroughly explored" in the prior, dog hearing, proceeding. Johnson v Watkins 101 F3d 792 Section 5. For example, the Hearing did not point out that investigator Wengert gave two other versions of the shooting event, one Wengert gave to Sgt. Rivers on the night of the event, (the Wengert stayed on the porch, and didn't go down and

up the stairs - version). That version was not available to the Plaintiff when the

Dog Hearing took place on 10-30-13 to cross examine Wengert, as it had not yet

been provided to Plaintiff. The dog hearing version featured (the three dogs

charged and the dog that was shot got up and charged again, before the second shot

was fired, version). Also Wengert gave a third version at his EBT that took place

on 4-28-16. (In that version the dog was shot twice and didn't get up and charge

Wengert a second time after she was shot the first time). Without access to these

different versions of the dog's behavior, Wengert's various versions could not be

used to discredit Wengert's testimony given at the Municipal Dog Hearing. These

conflicting versions were not available to Plaintiff at the dog hearing to present to

the Examiner for his consideration of the veracity of Wengert's testimony,

demonstrating that the issue before the Hearing Examiner court was not

"thoroughly explored." Also the Hearing Examiner did not look at the dog autopsy,

but gave no reason for not doing so, even though the Plaintiff's counsel said it was

relevant and admissible at that hearing. That autopsy supported the Plaintiff's

testimony that the dog was not charging the investigator when shot, but was

instead walking past him, as it showed the bullet went from the left to the right side

of the dog. (It did not go from the front to the back of the dog as it would have

done had it been charging at Wengert when Wengert shot it as Wengert claimed.)

10

Also Wenert's down and up the porch stairs version, is not consistent with the EBT testimony of any of the other witnesses, including Wengert's co-Defendants, the Plaintiff and Mr. Flowers. It is not even consistent with Wengert's statement to Sgt. Rivers given on the night of the incident. Such evidence was not presented at the dog hearing. (It couldn't have been presented at the dog hearing because the dog hearing took place long before the depositions took place, and before Rivers' report was provided to the Plaintiff.)

Furthermore the use of the City of Rochester Hearing Examiner's decision demonstrates a clear conflict of interest. The City of Rochester is a Defendant in this case. If this court allows a City of Rochester Hearing Examiner's decision to collaterally estop a case brought by a citizen who then sues the City, thus allowing the City to bring multiple minor charges against citizens who may have valid cases against the City, and by deciding such hearings in the City's favor,  and thereby protect the City from liability for its tortious behavior,  merely because the City's own examiners found against the citizen in such minor City proceeding, the results of such a system will lead to outrageous, and almost certainly unconstitutional, misuse of the City's power to abuse its citizens by protecting itself through collateral estoppel, through hearings conducted by their own employee Hearing Examiners.

In addition the issues before this Court and the ones before the Hearing Examiner were not identical. The Dog Hearing was designed to determine if the dogs were dangerous, not to determine if Wengert was justified in shooting one of the dogs.

WHEREFORE plaintiff requests that the Court deny the Defendant's Motion in Limine in its entirety, grant Plaintiff's Motion in Limine in its entirety, and for such other and further relief as the court deems just and proper.

## CERTIFICATION TO THE COURT

E. Robert Fussell affirms to this court under penalty of perjury as follows: That your deponent is an officer of the court, has reviewed the foregoing affirmation and affirms that his affirmations are true.

Dated: February 11, 2019

_s/_____

E. ROBERT FUSSELL

13